UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMES GLASGOW,<br><br>    Plaintiff,<br><br> v.<br><br>NANCY A BERRYHILL, Deputy Commissioner of Social Security for Operations,<br><br>    Defendant. | CASE NO. 2:18-CV-00265-DWC<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

  Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 5.

  After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred when he failed to provide specific, legitimate reasons, supported by substantial evidence, to reject medical opinion evidence from Dr. Dean Ishiki, M.D., and Dr. David Widlan, Ph.D. Had

the ALJ properly considered this evidence, the residual functional capacity ("RFC") may have included additional limitations. The ALJ's error is therefore not harmless, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Deputy Commissioner of Social Security for Operations ("Commissioner") for further proceedings consistent with this Order.

## FACTUAL AND PROCEDURAL HISTORY

On September 16, 2014, Plaintiff filed applications for SSI and DIB, alleging disability as of April 1, 2011. *See* Dkt. 8, Administrative Record ("AR") 18. The applications were denied upon initial administrative review and on reconsideration. *See* AR 18. ALJ Tom L. Morris held a hearing on October 11, 2016. AR 35-77. In a decision dated January 5, 2017, the ALJ determined Plaintiff to be not disabled. AR 15-34. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. *See* AR 1-6; 20 C.F.R. § 404.981, § 416.1481.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by: (1) failing to properly consider opinions from Dr. Ishiki; Dr. Widlan; Dr. Dennis Haack, M.D.; Dr. Kathleen Andersen, M.D.; Ms. Jessica Jelmberg, MA, LMFT; and a shared opinion from Dr. Theresa Clark, M.D., and Ms. Srujana Karlapalem, PA-C; and (2) failing to provide specific, clear and convincing reasons to reject Plaintiff's subjective symptom testimony. Dkt. 13.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

**I.   Whether the ALJ properly considered the medical opinion evidence.**

Plaintiff argues the ALJ failed to properly consider opinion evidence from Dr. Ishiki, Dr. Widlan, Dr. Haack, Dr. Andersen, and Ms. Jelmberg, and a shared opinion from Dr. Clark and Ms. Karlapalem. Dkt. 13, p. 10-15.

In assessing an acceptable medical source – such as a medical doctor – the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

A.   Dr. Ishiki

Plaintiff maintains the ALJ erred in his consideration of medical opinion evidence from Plaintiff's treating psychiatrist, Dr. Ishiki. Dkt. 13, p. 14.

Dr. Ishiki has provided Plaintiff with psychiatric treatment since 1999. *See* AR 370. The ALJ rejected four statements from Dr. Ishiki. *See* AR 27. First, Dr. Ishiki wrote a letter on January 11, 2012, describing Plaintiff's diagnoses and requesting academic accommodations for him. AR 375. Second, on June 7, 2013, Dr. Ishiki furnished a psychological/psychiatric

evaluation regarding Plaintiff's diagnoses and limitations in several areas of basic work activities.[1] AR 319-22. Dr. Ishiki noted Plaintiff has diagnoses of major depression (recurrent), attention deficit hyperactivity disorder ("ADHD"), and obsessive compulsive disorder. AR 320. Regarding Plaintiff's ability to sustain basic work activities "over a normal workday and workweek on an ongoing, appropriate, and independent basis," Dr. Ishiki opined Plaintiff was moderately limited in two areas: his ability to understand, remember, and persist in tasks by following very short and simple instructions; and his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without supervision. AR 321.

Dr. Ishiki further determined Plaintiff had marked limitations in several areas of basic work activities, including his ability to perform routine tasks without special supervision, adapt to changes in a routine work setting, and make simple work-related decisions. AR 321. In addition, Dr. Ishiki found Plaintiff had marked limitations in his ability to be aware of normal hazards and take precautions, and maintain appropriate behavior in a work setting. AR 321. Dr. Ishiki moreover opined Plaintiff had severe limitations in his ability to understand, remember, and persist in tasks by following detailed instructions; and perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision. AR 321. Likewise, Dr. Ishiki determined Plaintiff had severe limitations in his ability to complete a normal work day and work week without interruptions from psychologically based symptoms, and set realistic goals and plan independently. AR 321.

---

[1] The Court notes that it appears an additional page from a different source was inadvertently attached to Dr. Ishiki's June 7, 2013 opinion. *See* AR 323. As such, the Court does not consider this additional page in assessing the ALJ's treatment of Dr. Ishiki's opinion.

1 | Third, in July 2014, Dr. Ishiki submitted his initial psychiatric evaluation of Plaintiff from 1999. *See* AR 370, 392-94. In an accompanying letter dated July 30, 2014, Dr. Ishiki noted Plaintiff's current diagnoses were hoarding disorder, major depression (recurrent), and ADHD. AR 370. Dr. Ishiki wrote that all of Plaintiff's "problems have made it difficult for [him] to obtain and maintain employment." AR 370.

Fourth, on December 29, 2014, Dr. Ishiki wrote a letter and reiterated Plaintiff's current diagnoses. AR 340. Dr. Ishiki wrote Plaintiff's major depression and ADHD would "interfere with his ability to work on a sustained basis" and cause him to have "problems with motivation, energy, focus, and efficiency[.]" AR 340.

The ALJ rejected Dr. Ishiki's four opinions and the opinion evidence from Dr. Widlan and Ms. Jelmberg for the same reasons. AR 27. In rejecting these opinions, the ALJ wrote:

> While each has treated and/or examined the claimant, none is found to be persuasive given the numerous reports of the claimant overall doing well with treatment and successfully engaging in vocational rehabilitation, as well as, the broad range of activities he performed, including working as a musician, pet and house-sitting, and caring for his elderly mother.

AR 27 (internal citations omitted).

The ALJ rejected Dr. Ishiki's opinions because he found them unpersuasive in light of Plaintiff's treatment reports and daily activities, including his participation in vocational rehabilitation. AR 27. An ALJ need not accept an opinion which is inadequately supported "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). An ALJ may also reject a physician's opinion if it is inconsistent with the claimant's daily activities. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Regardless, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it

with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). As the Ninth Circuit has stated:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Embrey*, 849 F.2d at 421-22 (internal footnote omitted).

Here, the ALJ summarily concluded that Dr. Ishiki's opinions were unpersuasive in light of the record and provided record citations. *See* AR 27. The ALJ failed to explain how Plaintiff's treatment reports, participation in vocational rehabilitation, or daily activities contradicted Dr. Ishiki's opinions. *See* AR 27. Therefore, the ALJ's conclusory statement was not a specific, legitimate reason, supported by substantial evidence in the record, to reject Dr. Ishiki's opinions. *See McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (an ALJ's rejection of a physician's opinion on the ground that it was contrary to the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

Furthermore, the ALJ's statement that Dr. Ishiki's opinions contradicted Plaintiff's daily activities was not supported by substantial evidence in the record. Earlier in his decision, the ALJ stated that Plaintiff engaged in vocational rehabilitation. AR 24. The ALJ wrote that Plaintiff took two courses on Microsoft Word, Excel, and Outlook, and passed one exam. AR 24. Yet the ALJ failed to consider evidence of Plaintiff's difficulties in these courses. The record shows, for instance, that Plaintiff had trouble concentrating and needed coaching on effective study habits. *See, e.g.*, AR 562-63. Further, although Plaintiff passed one exam, the record shows Plaintiff did not pass the second exam. *See* AR 566 (indicating Plaintiff took "Microsoft Word and Excel

finals," but only "passed the one in Word"). In addition, the courses Plaintiff took occurred for a total of three hours per week over two days. AR 266. Such a limited schedule does not in itself contradict Dr. Ishiki's opinion.

The record contains other evidence of Plaintiff's difficulties in vocational rehabilitation. For example, Plaintiff struggled to fill out job applications on multiple occasions due to cognitive difficulties. *See* AR 469, 597, 1005; *see also* AR 58. A Careers Specialist at vocational rehabilitation center likewise noted Plaintiff "struggles with organization and time management." AR 988. She wrote Plaintiff was late to meetings and struggled to "keep[] track of his phone, computer, notes, etc." AR 988. Others at the vocational rehabilitation center likewise noted Plaintiff's difficulties with time management and organization. *See, e.g.*, AR 1003, 1043, 1051. Moreover, although Plaintiff obtained a job through vocational rehabilitation, he was fired within three weeks for performance issues. *See* AR 53, 760, 767, 1014. Thus, in all, the ALJ's assertion that Plaintiff's participation in vocational rehabilitation undermines Dr. Ishiki's opinion was not supported by substantial evidence.

With respect to Plaintiff's musical activities, the record reflects Plaintiff periodically performed music in groups. *See, e.g.*, AR 497, 854, 862. Plaintiff indicated that he sometimes performed music multiple times per week. *See, e.g.*, AR 854, 770. However, it is unclear how long Plaintiff performed each time. *See* AR 854, 770. Accordingly, this activity alone was not a specific and legitimate reason to discount Dr. Ishiki's entire opinion.

Similarly, the record does not support the ALJ's finding that Plaintiff's "housesitting" and "petsitting" contradicted Dr. Ishiki's opinion. The record indicates Plaintiff periodically performed these activities during 2016. *See* AR 40, 861, 888. But the record lacks information about what tasks were required of Plaintiff when he performed these activities. *See* AR 40, 861,

888. Additionally, the record shows Plaintiff encountered problems while performing these activities. For instance, in March 2016, Plaintiff forgot to take his medications while housesitting. AR 861. This resulted in him experiencing poor sleep, mood, and focus, as well as disorganization and fatigue. AR 861. In July 2016, Plaintiff was fired from a scheduled petsitting position because he failed to properly note his start date and did not care for the pets for an entire day. AR 935. On another housesitting occasion in 2016, Plaintiff became distracted while running water in the bathtub and flooded the homeowners' home. AR 53-54. Given the various difficulties Plaintiff had while fulfilling housesitting and petsitting duties, the record does not support the ALJ's assertion that these activities undermine Dr. Ishiki's opinion.

Moreover, substantial evidence does not support the ALJ's finding that Plaintiff's activities caring for his elderly mother contradict Dr. Ishiki's opinion. Plaintiff reported that he cares for his mother by helping her around her home and driving her to appointments. *See* AR 237, 1002. But Plaintiff also reported his sisters help him care for his mother. *See* AR 55, 237. Furthermore, Plaintiff testified he is limited in his ability to help with household chores because he cannot be on his feet long and has a difficult time bending down. AR 55. Plaintiff additionally testified that his mother helps him remember his own appointments due to his difficulties with time management and organization. AR 55. Given the minimal activities Plaintiff assists his mother with, the assistance Plaintiff receives from his sisters, and Plaintiff's reliance on his mother for his own self-care, the ALJ's finding that Plaintiff's care contradicts Dr. Ishiki's opinion was not supported by substantial evidence in the record.

For the above stated reasons, the Court concludes the ALJ failed to provide any specific, legitimate reason, supported by substantial evidence, for discounting Dr. Ishiki's medical opinion. Hence, the ALJ erred.

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111)).

In this case, had the ALJ properly considered Dr. Ishiki's opinion, the RFC and the hypothetical questions posed to the vocational expert ("VE") may have included additional limitations. For example, the RFC and the hypothetical questions may have reflected Dr. Ishiki's opinion that Plaintiff is severely limited in his ability to understand, remember, and persist in tasks by following detailed instructions. The RFC and hypothetical questions may have also contained limitations reflecting Dr. Ishiki's opinion that Plaintiff is severely limited in his ability to complete a normal work day and work week without interruptions from psychologically based symptoms. The RFC and hypothetical questions posed to the VE did not contain these limitations. *See* AR 22, 66-77. Because the ultimate disability determination may have changed with proper consideration of Dr. Ishiki's opinion, the ALJ's error was not harmless and requires reversal.

B.  <u>Dr. Widlan</u>

Next, Plaintiff argues the ALJ failed to provide any specific, legitimate reason to discount medical opinion evidence from Dr. Widlan. Dkt. 13, pp. 14-15.

Dr. Widlan conducted a psychological/psychiatric evaluation of Plaintiff in July 2014. AR 324-34. As part of his evaluation, Dr. Widlan reviewed two records and conducted various psychological tests, including a clinical interview, mental status examination, and trail making exercises. *See* AR 324-34. Dr. Widlan opined Plaintiff was moderately limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision. AR 325. Dr. Widlan also determined Plaintiff had moderate limitations in his ability to adapt to changes in a routine work setting, ask simple questions or request assistance, and set realistic goals and plan independently. AR 325. Further, Dr. Widlan found Plaintiff had marked limitations in two areas: his ability to communicate and perform effectively in a work setting, and his ability to complete a normal work day and work week without interruptions from psychologically based symptoms. AR 325.

With the same language the ALJ used in assessing Dr. Ishiki's opinion, the ALJ rejected Dr. Widlan's opinion in light of Plaintiff's treatment records, participation in vocational rehabilitation, and daily activities. *See* AR 27. As stated above, an ALJ need not accept an opinion which is inadequately supported by, or inconsistent with, the record. *See Batson*, 359 F.3d at 1195. However, a conclusory finding by the ALJ is insufficient to reject an opinion. *See Embrey*, 849 F.2d at 421-22. In this case, the ALJ failed to provide his interpretation of the evidence, and did not explain how Dr. Widlan's opinion was undermined by the cited evidence. *See* AR 27. Without more, the ALJ has failed to meet the level of specificity required. *See Garrison*, 759 F.3d at 1012-13. Furthermore, as explained above, the ALJ's assertions about Plaintiff's participation in vocational rehabilitation and other daily activities are not supported by substantial evidence in the record. Therefore, the ALJ's conclusory finding that Dr. Widlan's opinion was unpersuasive was not a sufficient reason to discount the opinion.

1　　　　In addition, the ALJ rejected Dr. Widlan's opinion because he found it inconsistent with

2　aspects of Dr. Widlan's examination:

> [I]nconsistent with Dr. Widlan's ratings, the claimant performed within normal throughout. He was able to follow a simple 3-step command. On trail-making tasks, he placed in the non-impaired range.

AR 27 (citation omitted). Discrepancies between a physician's functional assessment and his clinical notes, recorded observations, and other comments about a claimant's capabilities is a legally sufficient reason to discount the assessment. *Bayliss*, 427 F.3d at 1216. Yet here, the ALJ merely stated Dr. Widlan's opinion was inconsistent with aspects of his examination without explanation as to how they contradicted one another. AR 27. Such a conclusory statement is not a specific, legitimate reason to reject Dr. Widlan's opinion. *See Embrey,* 849 F.2d at 422 (emphasis added) (an ALJ errs when he asserts without explanation that a medical opinion is "not supported by sufficient objective findings or [is] contrary to the preponderant conclusions . . . *even when the objective factors are listed seriatim*").

　　　　The ALJ failed to provide any specific and legitimate reason, supported by substantial evidence in the record, to discount Dr. Widlan's opinion. Therefore, the ALJ erred. The RFC and hypothetical questions posed to the VE may have contained additional limitations with proper consideration of Dr. Widlan's opinion, such as that Plaintiff was markedly limited in his ability to complete a normal work day and work week without interruptions from psychologically based symptoms. As the ultimate disability decision may have changed, the ALJ's error is not harmless. *See Molina*, 674 F.3d at 1115.

C. Dr. Haack, Dr. Andersen, Ms. Jelmberg, Dr. Clark, and Ms. Karlapalem

Plaintiff also alleges error as to the ALJ's treatment of opinion evidence from Dr. Haack, Dr. Andersen and Ms. Jelmberg, and the shared opinion from Dr. Clark and Ms. Karlapalem. Dkt. 13, pp. 13-15.

The Court has determined the ALJ committed harmful error in assessing the medical opinions from Drs. Ishiki and Widlan, and directed the ALJ to properly consider these opinions on remand. *See* Sections I. A.-B., *supra*. Because reconsideration of Drs. Ishiki's and Widlan's opinions may impact the ALJ's assessment of the opinion evidence from Dr. Haack, Dr. Andersen, Ms. Jelmberg, Dr. Clark, and Ms. Karlapalem, the Court directs the ALJ to reassess these opinions as necessary on remand.

If the ALJ intends to discount any medical opinion on remand, he is directed to explain his reasoning as to why he finds the opinion unpersuasive, and support his reasoning with substantial evidence in the record.

**II. Whether the ALJ properly discounted Plaintiff's subjective symptom testimony.**

Plaintiff also asserts the ALJ failed to provide any specific, clear and convincing reason to reject Plaintiff's subjective symptom testimony. Dkt. 13, pp. 2-10.

Because Plaintiff will be able to present new evidence and testimony on remand, and because proper consideration of the medical opinion evidence may impact the ALJ's assessment of Plaintiff's subjective symptom testimony, the Court declines to consider whether the ALJ erred with respect to Plaintiff's testimony. Instead, the Court directs the ALJ to reweigh Plaintiff's subjective symptom testimony as necessary on remand.

Nevertheless, the Court notes the ALJ's assessment of Plaintiff's subjective symptom testimony repeats some of the errors the ALJ made in assessing the opinion evidence from Drs.

Ishiki and Widlan. For instance, in rejecting Plaintiff's testimony, the ALJ relied on inaccurate descriptions of Plaintiff's participation in vocational rehabilitation and housesitting and petsitting jobs. *See* AR 24-25. But as explained above, the record does not support the ALJ's descriptions of these activities. *See* Section I. A., *supra*. Because the ALJ relied on some of the same invalid reasons to reject Plaintiff's subjective symptom testimony as he did to reject Drs. Ishiki and Widlan, the ALJ is directed to not repeat these errors on remand.

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein. The Clerk is directed to enter judgment for Plaintiff and close the case.

Dated this 30th day of August, 2018.

David W. Christel
United States Magistrate Judge